**David A. Middleton, Plaintiff in Error, v. De Kalb County Gas Company, Defendant in Error.**

**Gen. No. 5461.**

1. NEGLIGENCE—*when gas company not guilty of.*  A gas company is under no obligation to inspect attachments upon the premises of a consumer where such attachments have been selected by the consumer.

2. INSTRUCTIONS—*when as to evidence to be considered improper.* It is improper to tell the jury that the sufficiency of material used is to be determined by expert evidence only.  Such a question is one to be decided from all the evidence bearing upon the subject.

Error to the Circuit Court of DeKalb county; the Hon. MAZZINI SLUSSER, Judge, presiding.   Heard in this court at the October term, 1911.   Affirmed.   Opinion filed March 13, 1912.

W. C. KELLUM and H. S. EARLEY, for plaintiff in error.

JOHN FAISSLER and ALFRED H. GROSS, for defendant in error.

MR. JUSTICE WILLIS delivered the opinion of the court.

August 1, 1904, David A. Middleton, a merchant tailor occupying rooms in a building in Sycamore,

applied to the DeKalb County Gas Company to have gas piped to his rooms and attached to a tailor's stove. The company piped one of the rooms, set a meter, and connected the stove with the pipe by slipping a piece of rubber tubing about two feet long over a rubber nipple at the end of the pipe and over a like end on the stove. The work was done under a written contract. Middleton paid for the connection. He used the stove eight or ten hours a day until January 28, 1908. On that day a fire occurred, from, as Middleton claimed, a gas explosion; as the company claims, from gasoline fumes becoming ignited by a flame from the stove. Middleton's property was injured and he brought this suit against the company in the Circuit Court of DeKalb county to recover damages. The declaration contained three original and four additional counts. The first count charged that the connection was so negligently made that it became loose. The second count charged that the company carelessly connected the pipe with the stove by a rubber nipple which slipped off. The third count was like the first and second except that it charged that the heat disintegrated the rubber connections. The first additional count charged that the company carelessly and wilfully made the connection, and that if the company had inspected it the deterioration would have been discovered. The second additional count charged that the tubing was not a permanent connection, and alleged that the company negligently failed to perform its duty of inspecting the same. The third additional count was like the second, except that it charged the company with the duty to inform Middleton of the temporary character of the connection and that it neglected to do so. The fourth additional count charged the duty to make permanent connections, and that contrary thereto the connection was made as charged in the second count. Each count charged that by reason of the alleged

negligence gas escaped, took fire and caused the damage, and stated that Middleton was in the exercise of due care in the operation of the stove at the time of the fire.   There was a plea of not guilty.   A trial resulted in a verdict for Middleton.   A new trial was granted.   On the second trial the company had a verdict of not guilty.   A motion for a new trial was denied and the company had judgment for costs. Middleton brings the record here on a writ of error.

The evidence was conflicting upon the question whether Middleton or the company selected the rubber tube as the means of making the connection.   There was proof that it was the custom in gas fitting to use an iron pipe where the article to be connected was immovable and to use rubber tube where it was movable.   Middleton testified that the stove was nailed to a box and the box nailed to the building.   A witness testified that it was not fastened to the box when the connection was made, and that it was not attached on the day after the fire.   The servant of the company who made the connection testified that the stove was not fastened to the box then.   Even if the stove was nailed to a box and the box nailed to the building, it would require the drawing of but a few nails if Middleton wished to move it to a different position and it would be easier to secure a longer tube, if necessary, than to change a stationary iron pipe, and it was entirely consistent with the uses to which such stove is put that he should prefer a portable connection.   The jury were warranted in believing that Middleton requested that a rubber tube be used.

The proof is clear that the connection was reasonably safe when made and that it did satisfactory service for three years and a half.   The contract provided that the delivery of the gas should be considered complete when it left the service pipe of the company and also ''The company shall not be liable for any damages caused by the escape of gas.''   Middleton

having paid for the labor and material the connection became his property.

There is no theory upon which Middleton could recover unless the company owed him the duty of inspecting his own property from time to time or of informing him that the constant presence of the rubber tube close to the stove would cause it to deteriorate, crack and allow gas to escape. When Middleton selected the rubber tube, paid for it and caused the connection to be made, the company had a right to assume that he had ordinary knowledge concerning the durability of rubber, and would know that it would deteriorate from continual proximity to the heat from the stove. We are unable to find anything which would justify us in holding that the company was bound to inspect Middleton's property or to inform him of the destructibility of rubber. More will be said of the company's duty of inspection in discussing Middleton's objections to the company's 9th and 13th instructions.

Complaint is made of the ruling of the court in giving instructions Nos. 1, 3, 5, 6, 9, 11 and 13, requested by the company, but nothing is urged in argument against the 11th.

The 1st and 6th instructions were substantially the same, and told the jury that if they believed from the evidence that Middleton was asked to make a selection for the connection between the gas pipe and the rubber tubing and if they further believed that he selected the rubber tubing, then, as a matter of law, he assumed the risk from any loss or damage in the use of the same. If there had been a defect in the tube when put on and an explosion immediately followed, these instructions would have been erroneous, and to make them accurate, they should have contained the qualification "if the jury believe from the evidence that said tube was suitable and sufficient when furnished," but as it is undisputed that it was suffi-

cient and reasonably safe when put on and for three years and half thereafter, the omission of that element did not make the instructions bad in this case.

The 3rd instruction told the jury that the question of the sufficiency of the material used and the question as to the construction were to be determined by the evidence of persons skilled in the gas fitting business, and that the testimony of experts was entitled to the same weight and consideration as that of any other witness. It is apparent that this instruction was not strictly accurate, as these questions were not necessarily to be determined only by the evidence of persons skilled in the gas fitting business or experts, but upon all the evidence relating to that question. We do not think, however, that the instruction injured Middleton.

The 5th instruction told the jury that if they believed from the evidence that the fire was caused by other agencies than the escape of gas from the rubber tube, or if the evidence on the question was equally balanced, they should find for the company. The objection to the instruction is that there was no evidence upon which to base it. There was evidence that Middleton used gasoline in cleaning garments and when it was desired to get them out quickly they were hung up between curtains so as to direct the hot air from the stove up through the clothing, and Middleton testified that there was some clothing hanging there at the time of the fire. If gasoline was used, which made fumes in sufficient quantity to become ignited by the flame from the stove, the heat from these burning fumes may have been sufficient to have severed the rubber tube between the pipe and the stove, at the same time setting fire to the escaping gas. We think the objection to this instruction is untenable, as it is entirely possible that the fire might have been caused by other agencies than the escape of gas from the rubber tube.

The 9th instruction told the jury that the company owed no duty of inspection to Middleton as charged in the 1st and 2nd additional counts of the declaration. The 13th instruction told the jury that the law did not impose upon the company any obligation to inspect the pipes and connections in the tailor shop, and the failure to do so would not be negligence, if they found from the evidence that such pipes and connections were owned and controlled by Middleton. Suppose he had hired some other gas fitter to make this connection, could it be contended that if such other gas fitter had put on a suitable rubber tube connecting the pipe with the stove and was paid for the material and labor that he owed a duty to thereafter inspect the same? We do not think so. The company owed a duty of inspecting the pipes and fixtures which it owned in the building, but that duty did not, in our opinion, extend beyond the property which it owned, and that was only to and through the gas meter, as we understand it.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*