(No. 22233.—

MARGARET CLARE, Appellee, *vs.* THE BOND COUNTY GAS COMPANY, Appellant.

*Opinion filed April 21, 1934.*

C. E. DAVIDSON, and J. G. BURNSIDE, for appellant.

MEYER & MEYER, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Appellee recovered a judgment in the circuit court of Bond county against the Bond County Gas Company for damages resulting from an explosion in the building occupied by her. The judgment was affirmed by the Appellate Court for the Fourth District and the cause is here on appeal under a certificate of importance.

In September, 1931, appellee occupied, as a tenant, a one-story brick building in Greenville, in which she conducted a gift and book shop. The building had been piped

for gas about twenty-five years previously. Appellee desiring to heat the shop with gas, hired a plumber to install a gas stove furnished by appellant. Shortly after the installation of the stove she noticed an offensive odor, which irritated her respiratory organs and eyes and sometimes gave her a headache. She notified the president of the gas company, who, after examining the premises with the plumber, reached the conclusion that the odor was caused by the fumes of burned gas and recommended that a pipe be extended from the stove to the flue to carry off the fumes. A pipe was so installed but the trouble continued. Subsequently, upon his suggestions, the flue was cleaned, the pipe was cemented into it and the height of the flue raised in an effort to remedy what he thought was the cause of the trouble. According to the testimony of appellee there was no improvement. The plumber made three inspections and could find nothing wrong. There was no defect in the stove or the meter. The stove was located in the north room and the meter in a closet on the west side of the south (or front) room. The gas company's curb-box was located in the street, about seven feet from the front of the building. From that point the pipe to the meter extended under the sidewalk and the floor of the building. It then turned up to the meter connection. There was no basement under the building. The pipe from the curb-box into the building belonged to the owner of the building and not to the gas company. Horace Williams, a friend of appellee, was frequently in the shop and sometimes took charge of it for her. He was familiar with the conditions and talked with appellee about them several times. They testified that the odor was worse when the stove was turned on, and was so strong in the meter closet that it was necessary to keep the door closed. The president of the company tested the meter and the connections with a lighted match on the day it was installed. Subsequently he and the plumber tested the meter to ascertain

if there was any leak. On December 1, 1931, several weeks after the attempts to remedy the trouble, Williams, while in charge of the shop, was searching for a screw-driver. He opened the door of the meter closet, holding a lighted match in his hand. The explosion which caused the damage complained of occurred. An upheaval of the floor underneath the closet and at the southwest corner of the front room showed the greatest force of the explosion was at that point. It was thereafter discovered that the pipe under the floor contained holes, caused by rust, which allowed the gas to escape.

The gas used in appellee's shop was natural gas. The testimony on the part of defendant is that some natural gas, if confined in a small room, has a faint odor, but the gas furnished by defendant had none at all, and that the fumes from burned gas affect the nose and eyes but unburned natural gas does not. The company's president made repeated efforts to locate the cause of trouble, and the testimony clearly shows he had no knowledge that gas was escaping and was convinced from the effect on plaintiff's eyes and respiratory organs that the trouble came from burned gas fumes. Whether or not the plumber told him he thought there was a leak between the meter and the street is in dispute.

Appellant claims there was no evidence in the record to warrant the finding that it had notice and knowledge that the pipes were leaking and gas was escaping into the building; that without such notice or knowledge there was no duty incumbent upon it to shut off the gas supply; that plaintiff's evidence shows she was guilty of contributory negligence as a matter of law, and that the court erred in refusing to give a peremptory instruction for defendant and in giving plaintiff's instruction No. 1.

Where it appears that a gas company has knowledge that gas is escaping in a building occupied by one of its consumers it becomes the duty of the gas company to shut

off the gas supply until the necessary repairs have been made although the defective pipe or apparatus does not belong to the company and is not in its charge or custody. (*Windish* v. *People's Gas Co.* 248 Pa. 236, 93 Atl. 1003; *Schmeer* v. *Gas Light Co.* 147 N. Y. 529.) The law is equally well settled that where a gas company does not install the pipes or fixtures and does not own them and has no control over them it is not responsible for their condition or for their maintenance, and as a result is not liable for injuries caused by a leak therein of which it has no knowledge. *Schmeer* v. *Gas Light Co. supra; Greed* v. *Manufacturers' Light Co.* 238 Pa. 248, 86 Atl. 95; *Smith* v. *Pawtucket Gas Co.* 24 R. I. 292, 96 Am. St. Rep. 713; *Helm* v. *Manufacturers' Light Co.* 86 W. Va. 628, 104 S. E. 59; *Tremaine* v. *Halifax Gas Light Co.* 11 N. S. 394.

In the absence of notice of defects it is not incumbent upon a gas company to exercise reasonable care to ascertain whether or not service pipes under the control of the property owner or the consumer are fit for the furnishing of gas. As a general proposition, a person's duty can extend no further than his right, power and authority to carry it out. It cannot be seriously urged that the employees of a gas company have the right to go upon the premises of one of its customers for the purpose of inspecting his pipes or other fixtures except upon the invitation, license or permission of the owner.

In *Triplett* v. *Alabama Power Co.* 213 Ala. 190, 104 So. 248, plaintiff sought. to recover from a gas company for an injury claimed to have been sustained by a defective bath-water heater which had been connected to the gas company's pipes by a servant of the company. The defect was in the water heater, which was the property of plaintiff. In denying any liability the court said: "These conclusions are in accord with the authorities which we have had occasion to consider in the matter. They are to the effect that defendant in such cases is not under duty, unless

employed for that purpose, to inspect pipes or fixtures which are placed in the dwelling by its customers or its contractors over whom defendant has no control, and that the furnisher of gas in such cases is warranted in assuming that the interior system of pipes is sufficiently secure to permit the gas to be introduced with safety. * * * The rule may be different when the party furnishing gas knows that the interior arrangements are dangerously defective, but in this case there is no evidence sufficient to warrant a conclusion of such knowledge."

In *Okmulgee Gas Co.* v. *Kelly,* 105 Okla. 189, 232 Pac. 428, an injury resulted from a defective connection between a service pipe and a gas range. The evidence indicated that a rubber hose connection between the pipe and the range became loosened and permitted the escape of gas, so that when the stove was lighted the gas exploded, damaging the premises and inflicting fatal injuries upon Mrs. Kelly. The court said in its opinion: "If the gas pipes and fittings are the property of the consumer and there is no contractual duty resting on the gas company to inspect, the consumer, by application for gas service, assumes the burden of inspecting and maintaining the pipes and fittings on his property in a manner reasonably suited to meet the required service, and the company had the right to assume that these duties have been performed by the applicant." To the same effect are *Smith* v. *Pawtucket Gas Co. supra,* and *Pernick* v. *Central Union Gas Co.* 228 N. Y. 594.

The uncontradicted evidence shows that here the inspections made by the president of the gas company did not furnish him with knowledge of escaping gas in the premises, but, on the contrary, they convinced him there was no escape. It does not appear that those inspections were either negligently or unskillfully made. It was necessary to affirmatively show he had knowledge of facts which were sufficient to charge him with notice that gas was escaping.

Plaintiff's first given instruction told the jury that if the gas company, by the exercise of reasonable care, could have known that said pipes were unfit for transportation of dangerous gas so as to permit its escape, "then it was the duty of the defendant gas company, either to cause said service pipes to be repaired by the person whose duty it was to do so or to have the gas shut off at the street in order to avoid the dangers that might result, if any," and that a failure to do so constituted negligence. Under the settled law there was no duty imposed upon the defendant to inspect the pipes within plaintiff's premises, and the giving of this instruction was reversible error.

The judgment of the Appellate Court is reversed and the cause is remanded to the circuit court of Bond county.

*Reversed and remanded.*