George H. Edwards, Trading as Edwards' Florist, Appellee, v. North Shore Gas Company, Appellant.

Gen. No. 39,139.

McSurely, J., dissenting.

Opinion filed February 15, 1937. Rehearing denied March 1, 1937.

JOSEPH E. WINTERBOTHAM, of Chicago, for appellant.

CHARLES R. SERCOMB, of Chicago, and CLIFFORD S. CARPENTER, of Winnetka, for appellee; ALVIN V. NYGREN, of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action for negligence in failing to inspect and properly maintain certain gas pipes and upon trial by the court, there was a finding for plaintiff with judgment for $1,001, which defendant asks be reversed. There is no issue as to the amount of damage, but defendant contends that under the facts which are stipulated there was, as a matter of law, no duty upon it to

inspect or maintain the gas pipe; that, on the contrary, that duty was upon plaintiff and therefore defendant is not legally liable.

As before stated, the facts are not in controversy. Plaintiff is a florist in Winnetka, Illinois, and owns two lots with a frontage of 100 feet on Willow Road. These lots are 187 feet in depth. Willow Road is a public highway running east and west. Plaintiff's lots are on the north side of the road. Plaintiff took title to the premises in 1923 through mesne conveyance. In October, 1916, the premises were owned by one Meyer, who conveyed to a man named Kloepfer, one of plaintiff's predecessors in title. Defendant then and now is a public utility corporation organized for profit, engaged in furnishing gas to consumers in this locality. When Kloepfer owned the premises defendant's gas main (which was six inches in diameter) as now, was laid on the south side of Willow Road. In February, 1917, Kloepfer gave to defendant an order for the installation of a service pipe. The written part of the agreement of defendant with customers similarly situated and with Kloepfer was as follows:

"If a gas range is put in use on said premises within thirty (30) days from the time said connection is made, 70 feet of the connection beginning at the curb line will be run at the expense of the North Shore Gas Company, all in excess of 70 feet, the subscriber agrees to pay for at 14¢ per foot for connections ¾ to 1¼ inches in size. If a gas range is not put in use within the time above specified, the subscriber agrees to pay the above rates for the full measurement of the service pipe from the curbline to the basement of the building."

Willow Road was a paved highway 15 to 18 feet wide. On the north side of the road 14 feet and 3 inches from the greenhouse building on the premises, a shut-off box was placed. From the shut-off box running in a northerly direction, the defendant, in February or March,

1917, pursuant to the above agreement with Kloepfer, installed a ¾ inch black wrought iron pipe 140 feet 2 inches long, from the shut-off box to the point where it entered the service building of plaintiff. Between the west line of the building and the west line of the lot is a vacant space 6 feet wide. This service pipe was laid 2 feet under the ground and 5 feet 2 inches west of the west line of plaintiff's service building. It was a connecting pipe from defendant's gas main on the south side of Willow Road. This pipe ran from the main across the road to the shut-off box. The lots which compose the premises were drained by drain pipes 6 inches in diameter, made of glazed burnt clay material. When or by whom the drainage pipes were constructed does not appear. Since 1917, when the service pipe was installed, it has continuously remained imbedded in the ground, and during all the time the different owners of the premises (from Kloepfer to plaintiff) have received gas from defendant, delivered into that part of the service building used by the different occupants as a dwelling. The defendant never made an inspection or examination of the pipe, nor was it ever asked to do so by any occupant until plaintiff made that request on February 6, 1935. It is stipulated that pipe of this nature and thickness, imbedded in the ground at a depth of approximately 2 feet without protection or covering, will in the course of 13 to 20 years, rot, corrode and perforate. It is also agreed that illuminating gas of the kind manufactured by defendant contains an ingredient known as ethylene or hydro-carbon, and that such gas in small quantities is injurious to plant life, and when gas escapes it will diffuse itself along the lines of least resistance in any direction; that on or about February 6, 1935, gas being transmitted through the service pipe for use and consumption by plaintiff escaped through the service pipe and diffused itself along the lines of least resistance

into the tile drains of plaintiff and entered into the greenhouse, damaging the plants to the amount for which judgment was rendered. It is agreed that any damages sustained by plaintiff were due to the escape of illuminating gas through the service pipe.

The premises were used for a greenhouse prior to the time when plaintiff acquired his title, and plaintiff continued to conduct on these premises a florist business down to February 6, 1935, on which date plaintiff first had knowledge that damage was being caused to his plants. Plaintiff had no knowledge of the location of the service pipe. He telephoned defendant and within 20 minutes after defendant received the call it had two men at plaintiff's place of business. They inspected the premises but did not detect any odor of gas. Plaintiff requested defendant to make further inspection. Defendant then barred the ground on the west side of plaintiff's greenhouse by inserting an iron bar in close proximity to the pipe. A foreign odor was detected, and immediately the gas was shut off at the shut-off box in the street. Thereafter a section of the service pipe laid in the early part of 1917, approximately 90 feet north of the south line of plaintiff's premises, was taken up, a piece about 15 feet in length, and was found to be corroded so that gas passing through the service pipe could escape therefrom.

On May 29, 1923, plaintiff signed and delivered to defendant an application for gas service as follows:
"George H. Edwards
917 Willow Road,
Occupation—Florist
Premises—occupied as a home
Last applied—Lake Forest.
Application taken by E. Hurlbert

"The undersigned hereby applies to the North Shore Gas Company for gas service at the above address for a period of one (1) year and thereafter until service is

discontinued and agrees to pay therefor in accordance with the Company's rates from time to time in force and to abide by all reasonable rules and regulations prescribed by the Company governing gas service pipes and installation.

"G. H. Edwards
(signature of consumer)"

The application was accepted by defendant, and defendant continuously thereafter furnished gas to the plaintiff.

The contention of defendant is that plaintiff was the owner of the service pipe; that it had become a part of the real estate, the title thereof passing to plaintiff. Defendant cites authorities to the effect generally that whether such fixtures become a part of the realty depends upon the intention of the parties. Defendant cites *Fifield v. Farmers' Nat. Bank,* 148 Ill. 163, to that effect, and we do not question that such is the general rule. However, we think the fair inference from the written order given by Kloepfer under all the circumstances is that the service pipe belonged to the defendant and was its property, but that the owner, under the circumstances, agreed to pay for a part of the expense in putting it in.

The real question here is to determine upon whom, under the evidence, rests the duty of inspection and maintenance of the service pipe. Defendant contends it was upon plaintiff. In the first place, because he was the owner of it, and in the second place, because he was in control of it. The question of who was the owner of the service pipe is not as easy to dispose of as defendant seems to believe. We are not satisfied it was plaintiff, although if Kloepfer, his predecessor in title, was the owner, then the ownership passed to plaintiff by the conveyance he took through his predecessor. If plaintiff is to be regarded as the owner, it must be by reason of the order given to the gas company by

Kloepfer to install the pipe. That agreement, how-
ever, is silent on that subject. Defendant furnished
the material; it performed the necessary work; so far
as the evidence indicates, it laid the pipe according to
its own plans, out of material of its own choice, and in
a manner of its own choosing. It also appears that the
gas company desired the owner of these premises to
install a gas range. The evident purpose of this was
to create a market for its product. The agreement
provided that, if within 30 days from the time the con-
nection was made, a gas range was put in use, 70 feet
of the connection, beginning at the curb line, would be
run at the expense of the gas company, and the sub-
scriber agreed to pay for the balance at 14¢ a foot.
The range was put in and defendant billed the owner
for 69 feet of the pipe at 14¢ a foot, which would
amount to $9.66. This bill, however, defendant never
made any serious effort to collect, and apparently vol-
untarily charged the claim off its books. The inference
is that the owner of the premises had become a profit-
able customer, notwithstanding the cost of a somewhat
unusual installation. The service pipe, therefore, was
installed at the expense of defendant, according to its
own plans, as a part of its design and purpose to create
a market for its product. To that end the then owner
gave to defendant the privilege of laying the pipe on
the land, with the purpose in view, so far as the owner
was concerned, that he might enter into contractual re-
lations with the defendant for the sale of gas to him.
Defendant at once entered into contractual relations
with the owner, and the same contractual relationship
was continued with each subsequent owner including
plaintiff. The contract with plaintiff called for the
payment of the rates prescribed by the company. The
service was to continue for one year and thereafter
until discontinued. Plaintiff expressly agreed in his
application to "abide by all reasonable rules and regu-

lations prescribed by the Company governing gas service pipes and installation.'' Whoever may have been technically the owner of the pipe, we hold that in view of the contractual relations which existed between defendant and the owner with reference thereto, the duty of inspection rested upon defendant. It did not inspect, but was negligent in that regard. Plaintiff was damaged thereby. It follows defendant is liable.

The parties have cited a number of authorities purporting to state the rule of law in such cases. In 12 R. C. L. 907, sec. 47, it is said:

''A gas company not only must see that its pipes and fittings are of such material and workmanship and are laid in the ground with such skill and care that gas will not escape therefrom when new, but it must maintain such a system of inspection as will insure reasonable promptness in the detection of leaks that may occur from the deterioration of the material of the pipes or from any other cause within the circumspection of men of ordinary skill in the business; and a failure to take such precaution is negligence.''

In *Maton Bros., Inc. v. Central Illinois Public Service Co.*, 269 Ill. App. 99, affirmed in 356 Ill. 584, this court approved the rule announced in 28 C. J., sec. 58, page 592:

''A gas company must use due and reasonable care in the inspection of its pipes to insure reasonable promptness in the discovery of leaks that may occur from defects in or deterioration of pipes and valves from careless or wrongful meddling with its works on the part of others or from any other cause within the circumspection of men of ordinary skill in the business.''

Defendant, however, relies upon *Clare v. Bond County Gas Co.*, 356 Ill. 241, and *Smith v. Pawtucket Gas Co.*, 24 R. I. 292; *Middleton v. De Kalb County Gas Co.*, 168 Ill. App. 353, and contends that, under the

rule of law laid down in these cases, it is not liable. The case most relied upon is *Clare v. Bond County Gas Co*. We do not understand the law as stated in that case to be contrary to that laid down in the above authorities. In the *Clare* case the plaintiff sued to recover damages, which were the result of an explosion of gas in a building occupied by her as a tenant, in which she conducted a gift and book shop. The building had been piped for gas about 25 years previously. The plaintiff desired to heat her shop with gas and hired a plumber to install a gas stove which she obtained from defendant. After its installation she noticed an offensive odor; she notified the president of the gas company who, with the plumber, examined the premises, and came to the conclusion that the odor was caused by fumes of burned gas. He recommended that a pipe be extended from the stove to the flue to carry off the fumes; this was done, but the trouble continued. Again, upon the suggestion of the president, the flue was cleaned, the pipe cemented to it, and the height of the flue raised in order to remedy the trouble. There was no improvement. The plumber made three inspections but found nothing wrong. The stove was located in the north room, and the meter in a closet on the west side of the south or front room; the curb box of the gas company was located in the street about 7 feet from the front of the building; from that point the pipe to the meter extended under the sidewalk into the floor of the building. It then turned up to the meter connection. There was no basement under the building. The pipe from the curb box into the building belonged to the owner of the building and not to the gas company. The president of the company tested the meter and the connections with a lighted match on the day it was installed. Afterward he and the plumber tested the meter to ascertain if there was any leak. Several weeks afterward Horace Williams, a friend of

the plaintiff in charge of the shop, was searching for a screw driver; he opened the door of the closet, holding a lighted match in his hand, and the explosion which caused the damage complained of took place. It was afterward discovered that the pipe under the floor contained holes caused by rust which allowed the gas to escape. It was natural gas. The court, after stating the rule as to the duty of the gas company to shut off the gas supply when it has knowledge that gas is escaping, said:

"The law is equally well settled that where a gas company *does not install the pipes or fixtures and does not own them and has no control over them* it is not responsible for their condition or for their maintenance, and as a result is not liable for injuries caused by a leak therein of which it has no knowledge. . . . In the absence of notice of defects it is not incumbent upon a gas company to exercise reasonable care to ascertain whether or not service pipes under the control of the property owner or the consumer are fit for the furnishing of gas. As a general proposition, a person's duty can extend no further than his right, power and authority to carry it out. It cannot be seriously urged that the employees of a gas company have the right to go upon the premises of one of its customers for the purpose of inspecting his pipes or other fixtures except upon the invitation, license or permission of the owner."

The facts in that case are, we think, clearly distinguishable from those which exist here, in that these pipes were not under the control of the property owner but of the gas company, and were and had been for many years used by the gas company with the consent of the owner for the purpose of conveying the gas to the owner's premises where it was to be used. The contractual relations of the parties were such, irrespective of the ownership of the pipe, that the duty of

inspection was on the defendant. Inspection indeed was within its particular province and in the line of its business. On the facts stipulated, we hold that defendant is liable and the judgment is affirmed.

*Affirmed.*

O'Connor, J., concurs.
McSurely, J., dissents.