GEORGE MOORE, ADMINISTRATOR OF THE ESTATE OF CHARLES FREDERICK WILSON, DECEASED, PLAINTIFF v. PUBLIC SERVICE GAS COMPANY OF NORTH CAROLINA, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF v. LEAR-SIEGLER, INC. AND HONEYWELL, INC., THIRD-PARTY DEFENDANTS

No. 7528SC533

(Filed 7 January 1976)

Gas § 3— notice of leak — failure of company to terminate gas delivery

The trial court in a wrongful death action erred in granting defendant gas company's motion for a directed verdict where plaintiff presented evidence sufficient for the jury that defendant was negligent in failing to terminate the delivery of gas after it had been given notice of a leak.

APPEAL by plaintiff from Snepp, Judge. Judgment entered 20 February 1975 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 16 October 1975.

This is an action for the wrongful death of plaintiff's intestate on 14 January 1971. The intestate was born on 25 November 1968. The child's mother, Priscilla Harris Wilson Giles is the sole beneficiary. At the close of plaintiff's evidence defendant gas company's motion for a directed verdict was allowed.

When the evidence is taken as true and considered in the light most favorable to plaintiff, it tends to show the following.

In August, 1969, the mother purchased a gas heater from defendant gas company. Defendant ran a gas line to the house and installed the heater. Later in the fall, when defendant turned the gas on, the mother smelled gas. As a result of her call, defendant's employees repaired what they said was a leak. The mother made several other calls to defendant, reported that she smelled gas and was told it was her imagination. About three weeks before a fire occurred at her house on 14 January 1974, a friend was visiting with her in her home and told her that she smelled gas. As a result of her friend's statement she called the defendant. Defendant's employees came to her house and found nothing wrong. She was unable to say when any of the other calls were made to defendant except that she made one call the day before the fire occurred and told the person who answered the telephone that she smelled gas. That person told her it was her imagination.

January 14, 1971 was a warm day. The heater was on and was burning but was turned to the lowest degree on the thermostat. About 5:00 p.m. the friend who had smelled gas when visiting there three weeks earlier came in the house. She again smelled gas and told the mother it should be checked.

On that date, deceased, age 2, lived in the house with his mother and three half-sisters: Ramona, age 8; Penny, age 5; and Natalie, age 4. The ages are approximate because the mother could not remember exactly when they were born. About 7:30 p.m. the mother left the children alone in the house and went to another house about 150 feet away. About 15 minutes later, Penny, Natalie and deceased were playing in the living room where the heater was located. Penny "heard a big boom, and after the big boom, fire started getting up on the ceiling." Ramona had gone to bed and was awakened by "a big boom." Penny and Ramona ran to the window and began to call for

their mother. The mother heard their cries and ran home and saw a mass of flames in the living room. Most of the fire was around the ceiling. She could not get in the house. Ramona, Penny and Natalie jumped out of a bedroom window. About 20 minutes later firemen brought deceased out of the house. At that time he was still breathing, and was taken to the hospital. He died in his mother's arms while they were in the emergency room.

The most serious damage to the living room was the burning of the ceiling just above the heater. The heater did not appear to be materially damaged and was covered with debris. The gas piping to the heater was still connected. The heater was disconnected and removed from the premises the following day.

*Riddle and Shackelford, P.A., by John E. Shackelford, for plaintiff appellant.*

*Uzzell and DuMont, by Harry DuMont, for defendant appellee.*

VAUGHN, Judge.

Among other things, plaintiff alleged that defendant was negligent in: selling defective equipment, installation of the equipment, failing to make proper repairs, failing to provide proper safety devices, failing to provide proper ventilation to allow excess gas to escape and failing to make proper inspections. There was no evidence to support any of the foregoing allegations.

Plaintiff was allowed to amend the complaint to add an additional allegation of negligently failing to terminate the delivery of gas after notice of a leak.

Plaintiff presented at least some evidence in support of the foregoing allegation.

> "Where a gas company, which is engaged in supplying gas to a customer's building, becomes aware that such gas is escaping from the gas fixtures on the premises into the building, it becomes the duty of the gas company to shut off the gas supply until the further escape of gas from the fixtures can be prevented, even though the fixtures do not belong to the company and are not in its charge or

custody. If the gas company continues to transfer gas to the fixtures on the premises after it learns that the gas is escaping therefrom, it does so at its own risk, and becomes liable for any injury proximately resulting from its act in so doing. *Clare v. Bond County Gas Co.*, 356 Ill. 241, 190 N.E. 278." *Graham v. Gas Co.*, 231 N.C. 680, 58 S.E. 2d 757.

Whether plaintiff's evidence is plausible is for the jury and not for the court. When plaintiff's evidence is taken as true, as it must be on a motion for directed verdict, we believe it is sufficient to take the case to the jury.

Contributory negligence on the part of the mother will bar recovery to the extent that the recovery, if any, will inure to the benefit of the mother. Although plaintiff's own evidence tends to disclose facts which would permit the jury to find that the negligence of the mother was a proximate cause of the death of her child, that also is a question for the jury and not the court.

It was error to direct the verdict in favor of defendant.

Reversed.

Judges BRITT and ARNOLD concur.