In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3807

JAMES CIOMBER,

*Plaintiff-Appellant,*

*v.*

COOPERATIVE PLUS, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50129—**Philip G. Reinhard**, *Judge.*

———————

ARGUED OCTOBER 22, 2007—DECIDED MAY 28, 2008

———————

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* James Ciomber sued Cooperative Plus, Inc., alleging that the company was responsible for an explosion fueled by liquefied-petroleum (LP) gas that injured him and damaged his house. After the district court excluded the testimony of Ciomber's expert witness, *see* Fed. R. Civ. P. 37(c)(1), and disregarded Ciomber's statement of proposed material facts, *see* Loc. R. 56.1(b) (N.D. Ill.), it granted Cooperative Plus summary judgment because he proffered no evidence showing that the company caused the explosion. We affirm.

## I. HISTORY

In the middle of the night on November 18, 2001, Ciomber's house in Poplar Grove, Illinois, exploded. The building was mostly leveled, and those areas that were not leveled caught fire. Ciomber, who was in the house at the time, suffered severe injuries as a result, but amazingly (and thankfully) survived.

In November 2003, Ciomber filed suit in Illinois state court against Cooperative Plus, the company that provided LP-gas for his house, alleging that the company negligently caused the destruction of his house and his resulting injuries. Ciomber claimed that although he repeatedly reported to the company the existence of an LP-gas leak in his basement, the company did not take appropriate steps to repair the leak. He continued that, because Cooperative Plus breached its duty to fix the leak, LP-gas accumulated in his basement "in such a volume and in such a concentration so as to be susceptible to ignition by an unknown source." As Ciomber concluded in paragraph 12 of his complaint, the explosion and his injuries were "direct and proximate result[s] of the breaches of the duties" Cooperative Plus owed to him. Cooperative Plus denied Ciomber's numerous allegations in its answer; as relevant here, the company denied that Ciomber "was injured in the manner or to the extent claimed" in paragraph 12, and "further denie[d] the remaining allegations contained in [that paragraph]."

Shortly after Cooperative Plus filed its answer, the company successfully removed the action to federal district court on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441. Discovery commenced in May 2004. Although the court initially ordered discovery to cease in December 2004, it continued well into 2006 because,

among other reasons, Ciomber's attorneys—husband and wife Karl Szymanski and Cynthia Szymanski Koroll—made numerous motions for extensions of discovery deadlines. We need not recount the reasons underlying those motions, but what is pertinent is that, between May 2005 and September 2005, counsel moved five times to extend discovery deadlines, including the date by which they needed to disclose Ciomber's expert-witness report. *See* Fed. R. Civ. P. 26(a)(2). After Mr. Szymanski brought the fifth of these motions in September, the court warned him that, although it would grant the motion, he would have no more additional time to disclose the report; the court then stated that Mr. Szymanski had until October 31, and set a status hearing for November 2 to address other unresolved discovery matters.

Ciomber's attorneys disclosed the Rule 26(a)(2) report of his expert witness, Kim Mniszewski, on November 1, one day after the October 31 deadline. In the "report," Mniszewski merely provided eight terse statements concluding that Cooperative Plus was responsible for the destruction of Ciomber's house; the grounds for his conclusions were, in most instances, even more laconic. For example, Mniszewski concluded that "[t]he cause of the explosion is [sic] a buildup of [LP] gas from failed [sic] pipe connection in the basement area." Mniszewski "explained" that his conclusion was based on "inspection, analysis." Mniszewski also provided vague references to documents that he purportedly reviewed before forming his conclusions: (1) a county sheriff's report; (2) "[v]arious deposition transcripts and corresponding exhibits"; (3) the National Fire Protection Association's National Fuel Gas Code and LP Gas Code; and (4) National Propane Gas Association "documents."

Ciomber's attorneys also filed on November 1 another motion for more time to disclose the report; in the motion, counsel implied that the report, as disclosed, was incomplete, and stated that Mr. Szymanski was unable to disclose a completed report because he was hospitalized. The district court addressed the motion at the November 2 status hearing. Ms. Szymanski Koroll appeared at the hearing on behalf of Ciomber, and explained that Mr. Szymanski suffered a heart attack on October 30, which was why they were late in disclosing Mniszewski's report. Ms. Szymanski Kroll further stated that the disclosed report was "still not what [she] want[ed]," and asked for seven days to disclose an amended report. The court readily granted Ms. Szymanski Koroll's request; however, the amended report that she promised was never disclosed.

Nearly three months later, Cooperative Plus filed two motions, one asking the district court to exclude Mniszewski's testimony, and another seeking for summary judgment. Cooperative Plus contended that, because Mniszewski's report did not comply with Rule 26(a)(2)'s requirements, Ciomber should be prohibited from introducing Mniszewski's testimony in support of his negligence claim. *See* Fed. R. Civ. P. 37(c)(1). Cooperative Plus also asserted that without Mniszewski's testimony, Ciomber could not establish that the company's negligence caused the destruction of his house. Specifically, the company pointed to Ciomber's deposition testimony, in which he admitted that on the day before the explosion he moved his LP-gas-fueled dryer away from the dryer's LP line, and that the dryer did not operate after he moved it. Cooperative Plus therefore argued that, without Mniszewski's testimony countering Ciomber's admissions, Ciomber could not show that the company's negligence caused the LP-gas leak that led to the explosion.

The district court took Cooperative Plus's motions under advisement and instructed the parties to proceed with deposing Mniszewski. In addition to elaborating on his report, Mniszewski testified that Mr. Szymanski did not ask him to prepare the report until October 25, 2005—less than a week before the district court's final deadline for the report's disclosure. Mniszewski further stated that no one assisted him when drafting the report, and that he did not submit the report to anyone for review or comment before it was disclosed.

The parties deposed Mniszewski twice over a month-long period, and during that time Ciomber responded to Cooperative Plus's motion for summary judgment. As part of his filing, Ciomber submitted a response to Cooperative Plus's proposed material facts, as required by Loc. R. 56.1(b). But instead of presenting both a response to Cooperative Plus's statement of proposed facts and a separate statement of his own proposed facts, Ciomber commingled the two statements to create an argumentative response to Cooperative Plus's filing.

Not long after briefing completed, the district court granted both Cooperative Plus's motion to exclude Mniszewski's testimony and its motion for summary judgment. In a consolidated order, the court excluded Minzewski's deposition testimony, concluding that Ciomber "offered no justification for his failure to provide a complete expert report in a timely fashion." The court then stated that it would disregard the facts Ciomber presented in his Rule 56.1 response because the filing did not comply with Loc. R. 56.1(b). With no admissible expert testimony and no suitable statement of proposed facts, the court stated, Ciomber proffered no evidence to rebut Cooperative Plus's evidence showing that Ciomber

caused an LP-gas leak when he moved his dryer, and that his house was destroyed when the leaking gas ignited. The court therefore concluded that there was no material dispute regarding the issue of causation, and granted summary judgment for Cooperative Plus.

## II. ANALYSIS

Ciomber and Cooperative Plus do not dispute that Ciomber's negligence claim is governed by Illinois law. And under Illinois law, Ciomber needed to establish that (1) Cooperative Plus owed a duty of care to him as his LP-gas provider; (2) the company breached that duty; and (3) the company's breach caused his injuries and the destruction of his house.[1] *See Adams v. N. Ill. Gas. Co.*, 809

---

[1]  For clarity's sake, we will slightly alter the terminology used by Illinois courts when we discuss the elements of Ciomber's negligence action. Instead of saying that Ciomber needed to prove that Cooperative Plus "proximately caused" the explosion of his house (as Illinois courts would, *see, e.g.*, *Adams*, 809 N.E.2d at 1257) we will say only that Ciomber was required to prove that the company "caused" the explosion. This simplification stems from Illinois courts' definition of the term "proximate causation," and how the parties here employ the term. Under Illinois law, proximate causation encompasses both "causation-in-fact" and "legal causation." *See First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1072-73 (Ill. 1999); *see also People v. Hudson*, 856 N.E.2d 1078, 1083 (Ill. 2006). "Causation-in-fact" exists where "there is a reasonable certainty that a defendant's acts caused the injury or damage," meaning that the injury would not have occurred absent the conduct. *First Springfield Bank*, 720 N.E.2d at 1072. In contrast,

(continued...)

N.E.2d 1248, 1257 (Ill. 2004); *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004). Here, only the issue of causation is in play; the sole ground for the district court's grant of summary judgment was that Ciomber proffered no evidence to counter the undisputed evidence that the LP-gas leak was caused when he moved his dryer.

Ciomber contends that the district court was wrong for two reasons. First, he argues that he could have proven causation had the court not erroneously excluded Mniszewski's deposition testimony, or incorrectly disregarded his Rule 56.1 response. Ciomber also argues that, in any event, Cooperative Plus had conceded the element of causation in several state-court pleadings.

When addressing Ciomber's arguments, we will first examine whether the district court abused its discretion when it excluded Mniszewski's testimony and disregarded Ciomber's Rule 56.1 response. *See Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1108 (7th Cir. 2004) ("This court reviews the decision of a district court concerning compliance with local rules, such as Rule 56.1, only for an abuse of discretion."); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004) ("We review a trial court's dis-

---

[1] (...continued)

"legal causation" is a question of foreseeability that asks "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* Because causation-in-fact must always be established before any inquiry regarding legal causation begins, *see* 1 Dan B. Dobbs, *The Law of Torts* § 182 (2001), and because the parties appear to use the term proximate causation to mean causation-in-fact only, any discussion in this Opinion regarding causation will be limited to causation-in-fact.

covery determinations, including the decision to exclude expert testimony, under an abuse of discretion standard."). We will then examine whether the district court overlooked Cooperative Plus's purported judicial admission when granting summary judgment. *See Salgado v. General Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998) (stating that decisions predicating grant of summary judgment must be examined separately from grant itself). We review the grant of summary judgment *de novo*, taking the facts in the light most favorable to Ciomber, the non-moving party. *See Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 522 (7th Cir. 2008). And in so viewing the record, we will examine whether there is a genuine issue of material fact that precludes judgment as a matter of law. *See* Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

If Ciomber cannot show that the district court erred with regard to his Rule 56.1 response, Mniszewski's deposition testimony, or Cooperative Plus's state-court pleadings, then the court's grant of summary judgment must stand. The expert testimony, Rule 56.1 response, and purported admissions constituted the entirety of Ciomber's proffer as to the element of causation, and if the district court properly excluded them then Ciomber had no other way to dispute the company's evidence showing that he caused the explosion by rupturing his dryer's LP-gas line. Ciomber would thus be unable to show that a disputed material fact exists regarding the essential element of causation, and we would have to conclude that the district court properly granted summary judgment for Cooperative Plus. *See Celotex Corp.*, 477 U.S. at 323; *Cady*, 467 F.3d at 1061.

*A. The district court's exclusion of Ciomber's proffered evidence of causation*

We begin with Ciomber's challenge to the district court's decision to exclude Mniszewski's deposition testimony. Under Rule 26(a)(2), a party that intends to rely upon an expert witness's testimony is required to furnish by a date set by the district court a report containing, among other information, "a complete statement of all opinions" the retained expert will provide, "and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(I), (a)(2)(C); *see also Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005). Failure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to introduce the expert witness's testimony as "evidence on a motion, at a hearing, or at a trial." *See* Fed. R. Civ. P. 37(c)(1); *Jenkins*, 487 F.3d at 488. This sanction is " 'automatic and mandatory' " unless the offending party can establish " 'that its violation of Rule 26(a)(2) was either justified or harmless.' " *Keach*, 419 F.3d at 639 (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Ciomber does not challenge the court's conclusion that Mniszewski's report failed to comply with Rule 26(a)(2); he thus waives the point. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (" 'A party waives any argument that . . . it fails to develop on appeal.' ' (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002))). This is probably for the best; Mniszewski's undeveloped expert report was woefully deficient, and any argument to the contrary would have been frivolous. *See* Fed. R. Civ. P. 26 advisory committee's note (stating that Rule 26(a)(2) expert reports must be "detailed and complete," and not "sketchy and vague"); *Jenkins*, 487 F.3d at 487 ("The

purpose of the report is to set forth the substance of the direct examination." (internal quotation marks and citation omitted)); *Salgado*, 150 F.3d at 741 n.6 ("A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor . . . . [It] must include 'how' and 'why' the expert reached a particular result, and not merely the expert's conclusory opinions."). Ciomber likewise waives any argument that the deficiencies in the report were justified. *See Williams*, 302 F.3d at 666.

Ciomber instead contends that the expert report's deficiencies were harmless. Specifically, he asserts that Cooperative Plus cannot claim that it was prejudiced by the report because the company knew that Mniszewski was going to be an expert witness before it received his report. *See David*, 324 F.3d at 857. Ciomber also suggests that the report's shortcomings were cured when his attorney, Mr. Szymanski, supplemented Mniszewski's deficient report by filing with the district court a transcript of Mniszewski's deposition testimony. *See id.* Ciomber further argues that the deficient report was harmless because it was not the result of Mr. Szymanski's "bad faith or willfulness," but was instead due to the medical emergency that Mr. Szymanski suffered the day before the deadline for the report's disclosure. *See id.*

Ciomber's arguments fail. Contrary to Ciomber's belief, it makes little difference that Cooperative Plus knew that Mniszewski was his expert witness before he disclosed the report. Rule 26(a)(2) mandates a complete and detailed report of the expert witness's opinions, conclusions, and the basis and reasons for them, *see* Fed. R. Civ. P. 26(a)(2)(B)(I), and not merely the expert witness's

identity. Indeed, Rule 26(a)(2) makes it clear that the expert witness's identity is a separate fact that must be disclosed in addition to the report. *See* Fed. R. Civ. P. 26(a)(2)(B) (stating that disclosure of expert witness's identity "must be accompanied" by the expert report); *Musser*, 356 F.3d at 756-57 (explaining the procedure for disclosing expert witnesses' identity).

Moreover, Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify, *see Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000); *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998), and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony. Allowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): "to shorten or decrease the need for expert depositions." *Salgado*, 150 F.3d at 741 n.6. After all, the parties' need for expert depositions would increase if they could use deposition testimony to provide information they should have initially included in their Rule 26(a)(2) report. *See id.* Ciomber's assertion that Mniszewski's deposition testimony cured his deficient report is therefore meritless.

Equally meritless is Ciomber's assertion that the deficient report was due to his attorney's medical emergency. It truly is unfortunate that Mr. Szymanski suffered a heart attack on the eve of the deadline for the disclosure of Mniszewski's expert report, and we are happy to see that he appears to have made a full recovery. Nevertheless, Mr. Szymanski's medical emergency does not explain

why he waited to ask Mniszewski to compose the report a mere six days before the deadline, a fact that helps explain why Mniszewski's conclusions and reasoning were so cursory. Given that Mniszewski drafted the report without any help or input from Mr. Szymanski, the emergency also does not explain why the report was deficient. The emergency likewise does not explain why Ms. Szymanski Koroll did not disclose an amended expert report after the district court rightly granted her request for time to do so. Despite Ms. Szymanski Koroll's assurances, no amended expert report was ever disclosed, even though Cooperative Plus highlighted the report's deficiencies—three months after it was disclosed—in its motion to exclude Mniszewski's testimony. *See id.* ("Disclosures must not be used as a means to extend a discovery deadline."); *cf. Musser*, 356 F.3d at 758-59 (upholding exclusion of late expert-witness report where party "never attempted to disclose any witnesses as experts until the defendants moved for summary judgment").

Indeed, based on the record before us, we agree with the district court that the fact that Mniszewski's expert report was deficient was not harmless. Because of the report's deficiencies, Cooperative Plus was forced to depose Mniszewski with little or no understanding as to what he would testify. *See Sherrod*, 223 F.3d at 613 ("The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case."). Moreover, the district court was forced to devote considerable time and resources to address the matter of the deficient report—time and resources that instead could have been devoted to reaching a

speedy resolution of Ciomber's suit. *See Salgado*, 150 F.3d at 741 n.6 (stating that Rule 26(a)(2) requires "detailed and complete" report "to conserve resources"). We thus cannot say that the district court abused its discretion by imposing the "automatic and mandatory" sanction of excluding Mniszewski's deposition testimony. *See Keach*, 419 F.3d at 639.[2]

Nor did the district court abuse its discretion by refusing to consider Ciomber's Rule 56.1 response. Rule 56.1 requires a party seeking summary judgment to include

---

[2] Cooperative Plus asserts Ciomber's failure to point to admissible expert-witness testimony alone dooms his appeal. Specifically, Cooperative Plus contends that Ciomber can prove causation only with expert testimony, and because Mniszewski's testimony was correctly excluded, we must uphold the district court's grant of summary judgment. In making its argument, Cooperative Plus relies on two cases in which Illinois state courts concluded that an explosion does not create a presumption of negligence. *See John Morris Co. v. Southworth*, 39 N.E. 1099, 1100 (Ill. 1894); *Edmonds v. Heil*, 77 N.E.2d 863, 870 (Ill. App. Ct. 1948). Fair enough, but those cases do not state that the cause of an explosion must be proven by expert testimony. Nor does *Adams v. Northern Illinois Gas Co.*, 809 N.E.2d at 1260, the state court decision that Cooperative Plus pointed to at oral argument when contending that, in all cases involving an explosion, causation must be proven by expert testimony. In fact, causation and the manner in which it must be proven was not even at issue in *Adams*; the "sole inquiry" the *Adams* court undertook concerned the "existence of a legal duty." *Id.* at 1257. And because we found no other Illinois state court decision that supports Cooperative Plus's point, we cannot agree with the company's proposition that the cause of an explosion must be proven by expert testimony in all instances.

with his motion "a statement of material facts as to which the . . . party contends there is no genuine issue and that entitle the . . . party to a judgment as a matter of law." Loc. R. 56.1(a)(3). The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Loc. R. 56.1(b)(3)(B), and a separate statement "consisting of short numbered para- graphs[ ] of any additional facts that require the denial of summary judgment," Loc R. 56.1(b)(3)(C). District courts are " 'entitled to expect strict compliance' " with Rule 56.1, *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (quoting *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)), and a court does not abuse its discretion when it opts to disregard facts pre- sented in a manner that does follow the Rule's instruc- tions, *see Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995).

Here, the district court refused to consider the facts proposed in Ciomber's Rule 56.1 response after con- cluding that he did not separate his proposed facts from his responses to Cooperative Plus's proposed material facts. As the court explained, Ciomber's response contained only "lengthy recitations of additional facts in his re- sponses to [Cooperative Plus's] statement of material facts." Ciomber does not contest the court's characteriza- tion of his Rule 56.1 response, and our own review of his response confirms the court's findings. Ciomber's response contained several extremely long, argumentative para- graphs, and in those paragraphs he simultaneously denied the veracity of Cooperative Plus's proposed mate- rial facts and presented additional facts of his own. And

because Ciomber's response did not comply with Loc. R. 56.1(b)(3)(B) and (b)(3)(C), the district court did not err by refusing to consider the facts he proposed. *See Cichon*, 401 F.3d at 809-10; *Midwest Imports, Ltd.*, 71 F.3d at 1315-16.

### B. *Cooperative Plus's purported admissions in state-court pleadings*

Ciomber also makes a multi-faceted argument that the district court overlooked Cooperative Plus's numerous admissions of causation in various state-court pleadings. *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("A judicial admission trumps evidence."). As a part of this argument, he asserts that, under Illinois law, Cooperative Plus admitted causation when it failed to deny his allegation of causation explicitly. He points out that in paragraph 12 of his complaint he stated that the destruction of his house and his injuries were "direct and proximate result[s] of the breaches of the duties" Cooperative Plus owed to him. However, Ciomber continues, Cooperative Plus denied in its answer only that he "was injured in the manner or to the extent claimed, and further denie[d] the remaining allegations contained in paragraph 12." Ciomber thus contends that, because Cooperative Plus did not explicitly deny causation in its answer, the company admitted that it caused the explosion.

Ciomber's argument is essentially a challenge to the sufficiency of Cooperative Plus's state-court pleadings. Normally, we are guided by the Federal Rules of Civil Procedure when addressing the sufficiency of pleadings, *see* Fed. R. Civ. P. 1, 8(b), but because Ciomber's complaint and Cooperative Plus's answer were filed in Illinois state court before this action was removed, we must apply Illinois's standards, *see* Fed. R. Civ. P. 81(c)(1),

*Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001). Those standards are outlined in both Illinois's Civil Practice Law, 735 Ill. Comp. Stat. 5/2-101 *et seq.*, and the Illinois Supreme Court Rules, *see* Ill. Sup. Ct. R. 1 ("The rules on proceedings in the trial court, together with the Civil Practice Law . . . shall govern all proceedings in the trial court . . . .").

As Ciomber points out, the Civil Practice Law requires a defendant's answer to "contain an explicit admission or denial or each allegation" presented in a complaint, and further states that every allegation that is "not explicitly denied is admitted." 735 Ill. Comp. Stat. 5/2-610(b); *see also Parrish v. Hackman (In re Estate of Andernovics)*, 759 N.E.2d 501, 504-05 (Ill. 2001). But neither the law, nor Ciomber, explains how detailed a denial must be to qualify as "explicit." Lucky for us, then, that the Illinois Supreme Court Rules shed some light on the subject: "If a pleader can in good faith deny all the allegations in a paragraph of the opposing party's pleading . . . he may do so without paraphrasing or separately describing each allegation denied." Ill. Sup. Ct. R. 136; *see also O'Connor v. Harris Bank Barrington, N.A. (In re Estate of Kirk)*, 686 N.E.2d 1246, 1251 (Ill. App. Ct. 1997); *In re Estate of Kirk*, 611 N.E.2d 537, 540 (Ill. App. Ct. 1993). The Supreme Court Rules even provide an example of what is a considered a sufficient denial: "Defendant admits [stating facts admitted] and denies the remaining allegations of paragraph 5 and each of them." Ill. Sup. Ct. R. 136 committee cmt.

Applying the Illinois Supreme Court Rules to Cooperative Plus's answer, it is apparent that Ciomber's contention is unavailing. Cooperative Plus clearly abided by the Supreme Court Rules when denying Ciomber's "remaining allegations contained in paragraph 12," which included the allegation of causation. *See* Ill. Sup. Ct. R. 136; *Kirk*,

611 N.E.2d at 540. In fact, the company phrased its denial *exactly* like the Supreme Court Rules' example of an acceptable denial. *See* Ill. Sup. Ct. R. 136 committee cmt.

Not to be deterred, Ciomber further contends that Cooperative Plus also affirmatively admitted causation in its answer and other pleadings by agreeing that: (1) "on November 18, 2001, LP-gas leaked out and into [Ciomber's] residence in such a volume and concentration which did explode"; (2) Ciomber detected the scent of LP-gas up to a year before November 18 and reported the scent to Cooperative Plus; (3) Cooperative Plus replaced certain LP-gas accessories in Ciomber's house in response to his reports of LP-gas leaks; and (4) the explosion could have been prevented by turning off the flow of LP-gas into the home. In other words, Ciomber argues that Cooperative Plus admitted to causing the explosion by agreeing that it supplied him LP-gas, that it was aware of a recurring LP-gas leak, that it addressed that leak, and that the explosion could have been prevented.

Contrary to Ciomber's interpretation of Cooperative Plus's statements, the company did not admit that it caused the LP-gas leak and the subsequent explosion; it merely agreed that there was a leak and an explosion. At most, Cooperative Plus's admissions might pertain to whether the company had a duty to Ciomber and whether it breached that duty. *See Adams*, 809 N.E.2d at 1259 (" 'Where it appears that a gas company has knowledge that gas is escaping in a building occupied by one of its consumers it becomes the duty of the gas company to shut off the gas supply until the necessary repairs have been made . . . .' " (quoting *Clare v. Bond County Gas Co.*, 190 N.E. 278, 279 (Ill. 1934))). But where, as here, the theory of liability is premised on negligence, an admission to a breach of duty has no bearing on whether

that breach actually caused the harm asserted. *See Andersen v. Mack Trucks, Inc.*, 793 N.E.2d 962, 969-70 (Ill. App. Ct. 2003) (stating that there must be "a nexus" between breach of duty and harm to prove causation); 1 Dobbs, *supra*, § 166 ("[P]laintiff must prove not merely that she suffered harm sometime after the defendant's negligent act occurred but that the harm was caused in fact by the defendant's conduct."); *cf. Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 159 (Ill. App. Ct. 2000) ("*Res ipsa loquitur* does not apply if the injury can be as readily attributed to pure accident as to the defendant's negligence."). Cooperative Plus did not admit any causal relationship between its alleged breach of duty to Ciomber, the LP-gas leak, and subsequent explosion. Thus, we cannot agree with Ciomber that the company admitted causation in its state-court pleadings.

## III. CONCLUSION

The district court did not err either by excluding Mniszewski's deposition testimony or by disregarding Ciomber's Rule 56.1 response. And Cooperative Plus did not concede causation in its state-court pleadings. Ciomber thus can point to no admissions or evidence establishing the element of causation of his negligence claim, much less disputing Cooperative Plus's evidence showing that he caused the explosion by rupturing his dryer's LP-gas line. The district court accordingly did not err in granting summary judgment for Cooperative Plus. *See Cady*, 467 F.3d at 1061.

AFFIRMED.