314 F.3d 1158
 Elaine R. MANGINI, Plaintiff-Appellee,
v.
UNITED STATES of America, Department of the Interior, National Park Service, Defendant,
and
Dick Gottsegen, dba Timberline Adventures, aka Timberline Bicycle Tours, Defendant-Appellant.
 No. 01-35273.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 4, 2002.
 Filed January 9, 2003.
 
 Sue Ann Love, Jardine, Stephenson, Blewett & Weaver, P.C., Great Falls, Montana, for the defendant-appellant.
 Francis X. Clinch, Jardine, Stephenson, Blewett & Weaver, P.C., Great Falls, Montana, for the defendant-appellant.
 Joseph P. Cosgrove, Hoyt & Blewett, Great Falls, Montana, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana; Donald W. Molloy, Chief District Judge, Presiding. D.C. No. CV-99-00061-DWM.
 Before TROTT, T.G. NELSON and THOMAS, Circuit Judges.
 OPINION
 TROTT, Circuit Judge:
 
 
 1
 Dick Gottsegen, doing business as Timberline Adventures, also known as Timberline Bicycle Tours (collectively "Timberline"), appeals the district court's judgment, following a bench trial, finding the United States and Timberline liable for negligently failing to warn Elaine Mangini ("Mangini") of the gravel patch on which her bicycle accident occurred.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 2
 Timberline argues that the district court abused its discretion by denying Timberline's motion to disqualify Judge Molloy. Because we conclude that facts unknown to Judge Molloy required his disqualification prior to the trial, we vacate the judgment and remand for a new trial before a different district court judge.
 
 BACKGROUND
 A.
 
 3
 On July 15, 1998, while on a tour operated by Timberline, Mangini had a bicycle accident in Glacier National Park, Montana. After riding into a gravel patch on Highway 17 (also known as Chief Mountain Highway), Mangini pitchedover the top of her handle bars and suffered serious physical injuries. Mangini brought a tort action in negligence against the United States and Timberline. Following a four-day bench trial on December 11, 13, 21, and 22, 2000, the district court found that the United States and Timberline negligently failed to adequately warn Mangini of the known gravel patch. The district court awarded Mangini $755,176.92, apportioning $656,675.58 to Timberline and $98,501.34 to the United States.
 
 B.
 
 4
 28 U.S.C. § 455 ("Section 455") provides in relevant part:
 
 
 5
 (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 6
 (b) He shall also disqualify himself in the following circumstances:
 
 
 7
 ...
 
 
 8
 (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
 
 
 9
 ...
 
 
 10
 (ii) Is acting as a lawyer in the proceeding....
 
 
 11
 28 U.S.C. § 455.
 
 C.
 
 12
 On November 14, 2000, prior to the trial, Timberline discovered that Judge Molloy's brother-in-law, Kurt M. Jackson ("Jackson"), was a seventeen-year associate at Hoyt & Blewett, the law firm representing Mangini. Mangini concedes that Jackson is the spouse of a person, Judge Molloy's sister, "within the third degree of relationship" to Judge Molloy, as described in Section 455. 28 U.S.C. § 455(b)(5). This discovery prompted Timberline to move to disqualify Judge Molloy pursuant to Section 455 on November 20, 2000, three weeks before the start of the trial. On November 21, 2000, the late John C. Hoyt ("Hoyt"), one of two partners in Hoyt & Blewett, submitted an affidavit to the district court opposing Timberline's motion to disqualify. Jackson, moreover, submitted a similar affidavit on December 5, 2000. The affidavits did not dispute Jackson's relationship to Judge Molloy, but attempted to avoid mandatory disqualification by averring that Jackson never appeared or acted as a lawyer in the proceeding. On the same day, the district court denied Timberline's motion to disqualify, finding that "Jackson is not a partner in the firm and has not acted as a lawyer in this proceeding ... He authored some correspondence that circulated among the parties before the case was filed." (Emphasis added).
 
 D.
 
 13
 On July 26, 2001, Timberline filed a motion with this court to supplement the record on appeal with three newly discovered documents reflecting Jackson's communication with the expert witness retained by Hoyt & Blewett on behalf of Mangini: (1) a May 11, 2000, letter from Jackson to the expert witness enclosing an initial retainer fee and case information to assist the expert in evaluating the case; (2) a May 25, 2000, letter from Jackson to the expert witness enclosing evidence for the expert's use in evaluating the case, and describing how Hoyt & Blewett was attempting to obtain an extension on the deadline for expert reports and disclosures; and (3) a record from the expert's office that listed Jackson as the expert's contact for the Mangini case. Jackson clearly wrote the two letters after Mangini filed her complaint in federal court on June 22, 1999, and the documents demonstrate that Jackson acted as a lawyer in the proceeding. Accordingly, in a separate Order, we granted Timberline's motion to supplement the record on appeal to correct the material misstatement in the record created by Hoyt's and Jackson's affidavits that Jackson did not act as a lawyer in the proceeding.
 
 DISCUSSION
 
 14
 Section 455(b)(5)(ii) requires disqualification under Section 455(a), even absent any evidence of actual bias. See Preston v. United States, 923 F.2d 731, 734 (9th Cir.1991) (addressing Section 455(b)(2), which requires disqualification when the judge either served as a lawyer or a lawyer with whom he previously practiced law served as a lawyer during such association in the matter in controversy). The uncontroverted evidence in the record after our grant of Timberline's motion to supplement shows that Jackson did act as a lawyer after Mangini filed her lawsuit. Hoyt & Blewett's characterization of Jackson's actions as being those of a "secretary" and not a lawyer are unconvincing. Hoyt & Blewett admitted at oral argument that the reason Jackson was assigned the task of communicating with the expert was because of his prior professional relationship with the expert. In addition, communicating about a case with an expert for the purpose of obtaining an expert opinion would, in almost all circumstances, constitute professional work for which attorneys fees could be awarded. See Bailey v. District of Columbia, 839 F.Supp. 888, 891 (D.D.C.1993) (noting that consultations and outside correspondence "are not mere clerical tasks."). We also note that the record of Jackson's contacts with the expert is incomplete because it is limited to written correspondence, and that Hoyt & Blewett categorically objected at oral argument to a possible remand for additional fact-finding on this question.
 
 
 15
 Ordinarily, we review a district court's denial of a disqualification motion for an abuse of discretion. Kulas v. Flores, 255 F.3d 780, 783 (9th Cir.2001) (recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned). In this case, however, Hoyt & Blewett's failure to provide Judge Molloy with all the facts deprived him of the opportunity to exercise his informed discretion.[2]
 
 
 16
 Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 62-64 (8th Cir. 1993) (finding that the district court "suffered under a misconception that prevented a genuine application of [its] discretion to all facets" of the case where the district court thought appellee only had one trademark when it analyzed whether to issue a preliminary injunction, and appellee failed to inform the district court that it had three trademarks). Now that all the facts are properly in the record, Section 455(b)(5)(ii) clearly requires disqualification.
 
 
 17
 The appropriate remedy in this case is to vacate and remand for a new trial before a different district court judge. Preston, 923 F.2d at 734-35 (after determining that the trial judge should have disqualified himself, the proper remedy was to reverse judgment and remand for a new trial because there was no way to "purge the perception of partiality" in the case). Here, as in Preston, there is no way to cure this problem because the fact remains that, unbeknownst to Judge Molloy, his brother-in-law acted as a lawyer for a tort plaintiff in an action that was tried in his court, without a jury. See Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 163 (3rd Cir.1993) (noting special concerns about bench trials in considering judicial disqualification). Thus, Section 455 compels vacation of the judgment in this case.
 
 CONCLUSION
 
 18
 Because Jackson acted as a lawyer in the proceeding before Judge Molloy, Section 455(b)(5)(ii) required his disqualification. Judge Molloy was unaware of the need to disqualify himself because of Hoyt's and Jackson's materially misleading affidavits and Timberline's failure to bring the relevant documents to his attention. Now that all the facts have come to light, however, we conclude that Judge Molloy was mandatorily disqualified under Section 455(b)(5)(ii). Accordingly, the district court's judgment is VACATED and this case is REMANDED for a new trial before a different district court judge.
 
 
 19
 VACATED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 In the companion case, No. 01-35275, the United States appealed the judgment of the district court. After selection for inclusion in the circuit mediation program, however, the United States dismissed its appeal
 
 
 [2]
 If we were reviewing Judge Molloy's decision on the record that was before him, we would affirm. Based on the record before him, Judge Molloy made a proper decision, and certainly did not abuse his discretionDatagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 871 (9th Cir.1991).